Dear Ms. Landrieu and Members:
You requested the opinion of this office concerning the method of funding lines of credit granted by the State Bond Commission (the "Commission").
Lines of credit are authorized in the capital outlay act, the current act being Act No. 645 of the 1993 Regular Session ("Act 645"). Section 1 thereof provides that the Commission may authorize a line of credit providing for the use of funds in anticipation of the sale of general obligation bonds from the Comprehensive Capital Outlay Escrow Account for capital improvement projects for which bond proceeds are appropriated by a current capital budget, prior to the actual issuance of bonds for such projects, unless the attorney general advises that an impediment exists to the valid issuance of the bonds on the date such line of credit is granted.
It has been suggested that the lines of credit could be funded, not through the issuance of bonds, but rather by using cash to be received by the State from an up-front payment to be made by the winning bidder for the land based casino in New Orleans, upon the commencement of operations of a temporary casino facility in Orleans Parish.
It is understood that the winning bid for the land based casino in New Orleans contains a provision for the payment of certain monies to the Louisiana Economic Development and Gaming Corporation (the "Corporation") upon the commencement of operations of the temporary casino. Those monies are to be in addition to the minimum compensation provided for in La. R.S. 4:641.
According to the provisions of La. R.S. 4:670(A), all monies received by the Corporation are to be paid into a corporate operating account. Quarterly, the Corporation shall transfer to the state treasury for deposit in the Casino Gaming Proceeds Fund, the amount of net revenues which the corporation determines are surplus to its needs. Net revenues or proceeds shall be determined by deducting from gross corporation revenues the necessary expenses incurred by the Corporation in the operation and administration of the casino gaming operations. The monies in the Casino Gaming Proceeds Fund must be appropriated by the legislature in accordance with law.
Article VII, Section 10(B) of the Louisiana Constitution was recently amended to provide that the Revenue Estimating Conference (the "Conference") shall prepare and publish initial and revised estimates of money to be received by the state general fund and dedicated funds for the current and next fiscal years which are available for appropriation. In each estimate, the Conference shall designate the money which is nonrecurring.
Section 10(D) of Article VII of the Constitution was also amended, to read in pertinent part as follows:
 (2) Except as otherwise provided in this constitution, the appropriation of any money designated in the official forecast as nonrecurring shall be made only for the purpose of retiring or for the defeasance of bonds in advance and in addition to the existing amortization requirements of the state.
Based upon the foregoing, if the monies derived from the commencement of the temporary casino are designated by the Conference as recurring, then the monies could be used for any purpose, including the funding of capital improvements, for which the legislature has appropriated the money.
If, however, the monies are designated by the Conference as non-recurring, then the monies can only be appropriated for "the purpose of retiring or for the defeasance of bonds in advance and in addition to the existing amortization requirements of the state."
The question then becomes, is a line of credit a bond? It is the opinion of this office that under current law, a line of credit is not a bond. A line of credit is an authorization for monies to be withdrawn from the state treasury in anticipation of the sale of general obligation bonds, but it is not, itself, a bond.
Trusting this adequately responds to your request, I remain
Yours very truly,
 RICHARD P. IEYOUB Attorney General
 BY: MARTHA S. HESS Assistant Attorney General
RPI/MSH/jav